**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| Jose Rodriguez, | Case No. 5:26-cv-3723 |
| *Plaintiff,* | |
| v. | |
| Wealth Firms, *et al.,* | **Plaintiff's Emergency Motion for Ex Parte Temporary Restraining Order, Preliminary Injunction, Expedited Discovery, and Alternative Service** |
| *Defendants.* | |

Plaintiff Jose Rodriguez hereby requests that the Court enter (i) an ex parte temporary restraining order freezing the Defendants' assets, (ii) a preliminary injunction, (iii) an order authorizing expedited discovery, and (iv) an order authorizing alternative service of process. In support, Mr. Rodriguez respectfully shows the Court as follows.

## I.    Preliminary Statement

Mr. Rodriguez filed this action to recover assets lost to a cryptocurrency-related fraud and conversion scheme operated by a sophisticated criminal syndicate. The Defendants stole assets worth approximately $164,885—a devastating loss. Sadly, Mr. Rodriguez is not alone. This is but one case among thousands arising from the ongoing crypto-

1

fraud epidemic, to which hardworking Americans are losing billions every year.

As is typical in crypto-fraud cases, Mr. Rodriguez does not know the Defendants' true identities or their precise whereabouts. But, with the assistance of a professional blockchain investigator, stolen assets have been traced to accounts controlled by the Defendants at OKX and Binance. This tracing is fundamental to the relief sought in this Motion. It is the foothold in the arduous climb toward recovery.

Mr. Rodriguez is the plaintiff in this action, having filed suit against Nicole Bailey, individuals operating under the alias "Nicole Bailey," and certain associated entities that orchestrated a sophisticated cryptocurrency fraud through a fictitious investment platform called Wealth Firms. The defendants contacted Mr. Rodriguez through WhatsApp in November 2024, represented themselves as experienced traders, and lured him into a fraudulent investment scheme.

The fraud involved convincing Mr. Rodriguez to transfer a total of approximately $164,885 worth of cryptocurrency to accounts controlled by the defendants under the guise of legitimate trading activity. Initially, Mr. Rodriguez appeared to profit from these investments; however, when he attempted to withdraw funds, the defendants imposed a series of illegitimate fees and taxes, repeatedly demanding additional payments and systematically blocking his attempts to recover his invested assets.

Mr. Rodriguez now seeks an ex parte temporary restraining order and preliminary injunction to prevent further dissipation of his assets by the defendants. He further requests expedited discovery to identify all individuals and entities involved in the scam, as well as leave for alternative service upon those defendants who remain anonymous or evade service.

## II.    Background

The facts giving rise to this action are set forth in detail in Plaintiff's Complaint, which is filed concurrently with this Motion and is incorporated herein by reference.

## III.    Supporting Materials

Mr. Rodriguez submits the following materials in support of this Motion.

**Exhibit 1: Cole Declaration.** Evan Cole is Plaintiff's investigator in this case. Mr. Cole's declaration attests to information about the cryptocurrency-scam epidemic, cryptocurrency technology, and blockchain-tracing methodology. It also provides the blockchain-tracing report showing the locations to which the assets misappropriated from the victim were ultimately transferred.

**Exhibit 2: Hoda Declaration.** Marshal Hoda is counsel to Mr. Rodriguez in this matter. Counsel's declaration attests to the reasons why the Court should not require notice before issuance of an ex parte temporary restraining order.

3

### IV.    Argument

### A.    The Court Should Issue the Temporary Restraining Order Ex Parte.

Rule 65(b) provides that a court may issue a temporary restraining order without notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard."[1] Mr. Rodriguez has made this showing.

Mr. Rodriguez's Complaint and the Cole Declaration demonstrate that the Defendants stole the victim's assets in a pig-butchering scam and have been transferring them across the blockchain.[2,3] The nature of cryptocurrency—an inherently mobile, pseudonymous asset class—means the Defendants could dissipate the stolen assets at any time, rendering moot Mr. Rodriguez's claims and this Court's ability to award effective final relief.[4,5]

---

[1] FED R. CIV. P. 65(b)(1)(A)-(B).

[2] Ex. 1, Cole Declaration, ¶¶ 3 – 6.

[3] *Id.* Complaint ¶¶ 32 – 52.

[4] *Id.*

[5] *See, e.g.*, *Harris v. Upwintrade*, 1:24-cv-00313-MJT, Dkt. 7 (E.D. Tex.) (Truncale, J.) (Aug. 8, 2024), at p. 9 (granting TRO in functionally identical pig-butchering case and noting "[i]n light of the speed with which cryptocurrency transactions are made, as well as the potential that the Defendants may further move the assets they are alleged to have stolen, the Court finds that the [Plaintiffs'] request to freeze the exchange accounts to which those assets were transferred is justified, as have other courts considering similar circumstances"); *Cohn v. Popescu*, 1:24-cv-00337-MJT, Dkt. 8 (E.D. Tex.) (Truncale, J.) (Aug. 30, 2024) (same); *Ohlin v. Defendant 1*, No. 3:23-cv-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are

If the Defendants were provided notice of this Motion, it would be "a simple matter" for them to "transfer [the stolen cryptocurrency] to unidentified recipients outside the traditional banking system, including contacts in foreign countries, and effectively put it beyond the reach of this court."[6,7,8] Numerous courts have applied just this logic in granting ex parte asset-freezing orders in crypto-fraud cases like this one.[9]

---

made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe,* No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

[6] *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also, e.g.*, *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (noting that *ex parte* order is justified under this logic if applicant shows that "the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history").

[7] *Fed. Trade Comm'n v. Dluca*, No. 18-60379-CIV, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-CV-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018).

[8] *Jacobo*, 2022 WL 2052637, at *3 (quoting *Dluca*, 2018 WL 1830800, at *2).

[9] *See, e.g.*, *Harris*, Case No. 1:24-cv-00313-MJT, Dkt. 7, at p. 7 (issuing TRO without notice in pig-butchering case where "the thrust of the [Plaintiffs'] allegations is that the Defendants are professional cybercriminals who have every motivation to place their ill-gotten gains beyond the reach of this Court or any other authority … [and they] have provided sufficient evidence to suggest that the Defendants will in fact further dissipate assets if they were given notice of this motion"); *Gaponyuk v. Alferov*, No. 2:23-cv-

### B.    Mr. Rodriguez Has Met the Substantive Requirements for Issuance of a Temporary Restraining Order.

To obtain a temporary restraining order, the movant must show: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest.[10] Mr. Rodriguez has met each of these requisites for the reasons set out below.

#### 1.    Element 1: The Merits.

Mr. Rodriguez's Complaint alleges that the Defendants are liable for (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (2) conversion, and (3) fraud. Mr. Rodriguez is likely to succeed on the merits of each of these claims.[11]

---

01317, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023) (issuing *ex parte* asset-freeze TRO in similar crypto-fraud case, and writing that "federal district courts have granted *ex parte* relief in situations like this one, noting the risks that cryptocurrencies may rapidly become lost and untraceable"); *Ohlin*, 2023 WL 3676797, at *2 (notice not required where plaintiff offered declarations showing that the defendants were crypto-criminals, which gave the court "every reason to believe the Defendants would further hide those [stolen] assets if they were given notice"); *Jacobo*, 2022 WL 2052637, at *3 (notice not required because plaintiff made credible allegations that defendants were crypto-criminals, which "pose[d] a heightened risk of asset dissipation").

[10] *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

[11] While venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3), Mr. Rodriguez is a resident of New York. The Court should thus apply New York law to Mr. Evans's common-law conversion and fraud claims.

*RICO Claim.* To recover on a civil RICO claim, a plaintiff must show (1) a violation of 18 U.S.C. § 1962 (a "RICO violation"), (2) an injury to business or property, and (3) that such injury was caused by the RICO violation.[12] To prove a RICO violation, a plaintiff must show that the defendant is (1) a person[13] who engaged in (2) a pattern[14] of racketeering activity,[15] (3) connected to the acquisition, establishment, conduct, or control of an enterprise.[16]

Mr. Rodriguez's RICO claim is likely to succeed. The Complaint makes non-conclusory allegations sufficient to establish each element, including by (1) identifying and defining the Defendants' enterprise,[17] (2) explaining their pattern of wire fraud,[18] and (3) recounting the injuries suffered as a direct result of the Defendants' racketeering scheme.[19] The Complaint and the Cole

---

[12] *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023).

[13] A RICO "person" is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961.

[14] A "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

[15] "Racketeering activity" includes acts indictable under 18 U.S.C. § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud). 18 U.S.C. § 1961(1)(B).

[16] An enterprise is "a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (defining enterprise and recounting elements).

[17] Complaint, ¶¶ 32 – 52.

[18] *Id.*

Declaration show that the Defendants' scheme was the very definition of an enterprise created solely to perpetrate a pattern of wire fraud, and on a global scale.[20] At least one court has issued a default judgment approving a civil RICO claim in a crypto-fraud case functionally identical to this one.[21]

*Conversion Claim.* To prevail on a conversion claim, a plaintiff must show "(1) [the plaintiff] has a right to the property at issue; (2) [the plaintiff] has an absolute and unconditional right to the immediate possession of that property; (3) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property; and (4) [the plaintiff] made a demand for the return of the property."[22]

Mr. Rodriguez's conversion claim is likely to succeed. The Complaint and the Cole Declaration show that the Defendants acted intentionally, that their scheme was wrongful, and that they took control of the victim's assets

---

[19] *Id.*

[20] *Id.*; Cole Declaration, ¶¶ 3 – 5.

[21] Order on Motion for Final Default Judgment, *Sun v. Defendant 1*, No. 1:23-cv-21855 (S.D. Fla. Dec. 8, 2023), pp. 3-4 ("The allegations in Plaintiff's Amended Complaint, admitted by default, establish each element of a RICO § 1962(c) violation. Specifically, Plaintiff alleges that Defendant and her co-conspirators operate a sophisticated global internet cryptocurrency fraud and conversion scheme …").

[22] *Weisberger v. Weisberger*, 2011 IL App (1st) 101557, ¶ 45, 954 N.E.2d 282, 289.

and have not returned them.[23] Numerous courts have found that plaintiffs were likely to succeed on conversion claims in crypto-fraud cases.[24]

*Fraud Claim.* To prevail on a fraud claim, a claimant must prove: (1) the defendant misrepresented a material fact; (2) the defendant knew the representation was false; (3) the claimant did not know the representation was false; (4) the defendant made the misrepresentation intending that the claimant act on it; and (5) damages resulted from the claimant's reliance.[25]

Mr. Rodriguez's fraud claim is likely to succeed. The Complaint and the Cole Declaration show that the Defendants intentionally and falsely represented that the victim's assets would be used for "trading" and "mining" cryptocurrency with the intention of causing the victim to transfer assets to the Defendants' control, that these statements were material, and that the victim acted on the Defendants' misrepresentations to the victim's detriment.[26]

---

[23] Complaint, ¶¶ 32 – 52; Ex. 1, Cole Declaration, ¶¶ 3 – 5.

[24] *See, e.g.*, *Bullock v. Doe*, No. 23-CV-3041 CJW-KEM, 2023 WL 9503380, at *5 (N.D. Iowa Nov. 3, 2023) ("Because the claim underlying this request [for an asset-freeze TRO] is mainly conversion—i.e., defendants have plaintiff's property wrongfully—plaintiff's likelihood of success on the merits of this claim suffice for this factor to weigh in favor of plaintiff and the Court need not discuss the further causes of action."); *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *4 (E.D. La. Feb. 23, 2024) ("It appears from the record that Defendants have no right to claim either possession or ownership of the stolen assets, and Defendants' taking of the funds is clearly inconsistent with Plaintiff's rights of ownership.").

[25] *See Jett v. Zeman Homes, Inc.*, 2018 IL App (1st) 170690-U.

[26] Complaint, ¶¶ 32 – 52; Ex. 1, Cole Declaration, ¶¶ 3 – 5.

9

### 2.    Element 2: Irreparable Harm.

The irreparable-harm requirement is satisfied for the same reasons explained above regarding the need for ex parte relief. The Defendants' stolen assets are held in cryptocurrency, an inherently mobile asset that can be dissipated at the click of a button. Courts have repeatedly found a risk of irreparable harm in crypto-scam cases like this one.[27]

### 3.    Element 3: Balancing.

Mr. Rodriguez's loss is devastating, and the order sought is the only hope of preserving some assets for recovery. While an asset freeze might cause temporary inconvenience to the Defendants, any restraint implemented can be undone should future developments require.[28] In addition, should the Court grant Mr. Rodriguez's requests for expedited discovery and alternative service, the Defendants are highly likely to receive actual notice of this proceeding in the near term. They will then have every opportunity to appear and seek dissolution of any freeze implemented.

---

[27] *See* n.5, *supra* (collecting cases).

[28] *See, e.g.*, *Licht*, 2023 WL 4504585, *3 (balancing factor weighed in plaintiff's favor because alleged crypto-thieves faced only "inconvenience" of asset-freeze, which could be undone); *Gaponyuk*, 2023 WL 4670043, at *3 (same, finding "a short-term freeze is unlikely to present any great harms"); *Jacobo*, 2022 WL 2052637, at *6 (same, finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court").

###### 4.      *Element 4: Public Interest.*

A freezing order will serve the public interest because it will "dissuade would-be fraudsters from stealing, laundering illegal proceeds, and preying on Americans."[29] It will also "prevent the Defendants from profiting from their scheme, ensuring they lack resources and incentives to perpetrate similar schemes in the future,"[30] and "provide[] assurance to the public that courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations."[31]

### C.      The Court Has the Authority to Issue the Asset-Freezing Injunction.

Typically, a court may issue an order freezing a defendant's assets only after a plaintiff's claims have been brought to judgment.[32] This rule does not apply, however, where the plaintiff seeks equitable relief and a constructive trust over traceable stolen assets.[33,34] Mr. Rodriguez seeks just such relief

---

[29] *Licht*, 2023 WL 4504584, at *3.

[30]  *Id.*

[31] *Jacobo*, 2022 WL 2052637, at *6 (quoting *Heissenberg*, 2021 WL 8154531, at *2); *see also, e.g.*, *Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

[32] *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999).

[33] *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

11

here. For that reason, the Court has the authority to issue the asset-freezing injunction sought.

### D.    The Court Should Not Require a Bond.

Rule 65(c) provides that a court issuing a preliminary injunction or TRO should do so "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[35] Yet, "[c]ourts retain extensive discretion to set the amount of a bond required as a condition for issuing a preliminary injunction and may, in fact, elect to require no bond at all."[36] The Defendants will not suffer any damages as a result of the requested asset freeze, which, as explained above, can be undone at any time if the Defendants choose to appear and challenge the injunction. Mr. Rodriguez thus requests that the Court decline to impose a bond.

### V.    Preliminary Injunction

In addition to the temporary restraining order requested above, Mr. Rodriguez respectfully requests that the Court set a date for a preliminary injunction hearing pursuant to Federal Rule of Civil Procedure 65(a). A TRO may remain in effect for only 14 days unless the Court extends it for good

---

[34] Complaint, ¶ 144.

[35] FED. R. CIV. P. 65(c).

[36] *Astrove*, 2022 WL 2805345, at *5 (declining to require bond in crypto-theft case); *Jacobo*, 2022 WL 2052637, at *6 (same).

cause or the adverse party consents. A preliminary injunction hearing will allow the Court to determine whether the asset freeze should remain in place while this case proceeds to resolution, and will provide any Defendants who appear with the opportunity to be heard.

Mr. Rodriguez has demonstrated the requisites for preliminary injunctive relief for the same reasons set forth in the TRO analysis above. Mr. Rodriguez therefore requests that the Court schedule a preliminary injunction hearing and order the Defendants to show cause why a preliminary injunction should not be entered.

## VI. Expedited Discovery

### A. Legal Standard

Typically, parties may not seek "discovery from any source before the conference required by Rule 26(f)."[37] But expedited discovery before a Rule 26(f) conference is permitted where "authorized … by court order."[38] Courts apply a "good cause" standard to determine whether such an order should issue.[39] Good cause may be found where "the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party."[40]

---

[37] FED R. CIV. P. 26(d)(1).

[38] *Id.*

[39] *Strivelli v. Doe,* No. CV222060MASRLS, 2022 WL 1082638, at *2 (D.N.J. Apr. 11, 2022).

[40] *Id.*

13

Many courts have authorized expedited discovery from cryptocurrency exchanges and internet-service providers in cryptocurrency-related fraud cases like this one.[41] Indeed, courts have affirmatively held that any privacy interests that alleged cybercriminals have concerning the discovery of information about their identities and activities is outweighed by the need to adjudicate victims' claims against them.[42]

### B.    Proposed Discovery

Mr. Rodriguez's proposed discovery arises from the pre-suit investigation detailed in the Cole Declaration. This investigation revealed a series of third parties likely to be in possession of information about the Defendants. Each of those third parties and their connection to this case is set out below.

| Subpoena Target | Connection to Case |
|---|---|
| | |

---

[41] *See, e.g.*, *Cohn v. Popescu*, No. 1:24-CV-00337, 2024 WL 4525511 (E.D. Tex. Aug. 16, 2024) (authorizing expedited discovery in similar cryptocurrency scam case); *Strivelli*, 2022 WL 1082638, at *2 (authorizing expedited discovery and noting "the Court's review of cryptocurrency theft cases reveals that courts often grant motions for expedited discovery to ascertain the identity of John Doe defendants"); *Licht v. Ling*, No. 3:23-CV-1018-X, 2023 WL 4504585, at *4 (N.D. Tex. June 20, 2023) (issuing broad authorization for expedited discovery in functionally identical crypto-fraud case and requiring that "any party served with a request for production shall produce all requested items within 72 hours of the request").

[42] *Gaponyuk v. Alferov*, No. 2:23-CV-01317-KJM-JDP, 2023 WL 4670043 (E.D. Cal. July 20, 2023) (finding alleged cybercriminals' privacy interests were "outweighed by the need to adjudicate the [victim's] claims," and holding that "privacy concerns shall not be a just cause for [a] subpoenaed non-party to withhold [] requested documents and information").

14

| | |
|---|---|
| WhatsApp, LLC | Mr. Rodriguez communicated with various individuals affiliated with the scam via WhatsApp. WhatsApp may possess information about the various users. |
| Namecheap, Inc. | Namecheap is the registrar of the wealthfrontstock.com web domain. They may possess information about the domain's operators. |
| NameSilo LLC | Namesilo is the domain registrar for wealthfrontes.com. They may possess information about the domain's operators. |
| Binance, Ltd. | The majority of Mr. Rodriguez's funds were traced to a deposit address at Binance. Binance will possess information about the accountholder associated with this address. |
| OKX Group | A portion of Mr. Rodriguez's stolen funds were traced to a deposit address at OKX. OKX will possess information about the accountholder(s) associated with the address. |
| Akamai International, B.V. | The wealthfrontstock.com domain is hosted on IP addresses belonging to Akamai International, B.V., an ISP headquartered in Massachusetts. They may possess information about the domain's operators. |
| NetZero, Inc. | The wealthfrontes.com site is hosted on IP addresses belonging to NetZero. They may possess information about the domain's operators. |

### C.    Information Sought

Mr. Rodriguez seeks the Court's authorization to issue subpoenas to each of the above-listed entities seeking the following information:

- Biographical and contact information associated with the Defendants' accounts;

- IP-address and device logs showing the devices and locations from which the Defendants accessed their accounts;

- Payments information, including transaction histories and information about credit or debit cards used to pay for the subpoena targets' services; and

- Account balances and activity.

Courts have authorized similar discovery where the plaintiff adduced evidence that the persons about whom the information was sought were cybercriminals and the plaintiff also sought a temporary restraining order freezing the assets held in those accounts.[43]

### D.    Follow-On Subpoena Authorization

In pig-butchering cases like this one, the discovery process resembles peeling the layers of an onion. Internet service providers' subpoena responses frequently reveal information warranting additional subpoenas to other internet service providers.[44] For example, a subpoena to Google concerning a Gmail address that the alleged scammers used to communicate with the plaintiff will reveal a Microsoft email address used as the "recovery email" for that account. For that reason, Mr. Rodriguez seeks the Court's authorization to issue follow-on subpoenas seeking the same scope of information outlined above to additional internet-service providers and

---

[43] *See, e.g.*, *Harris v. Upwintrade*, 1:24-cv-00313-MJT, Dkt. 7 (E.D. Tex.) (Truncale, J.) (Aug. 8, 2024) (granting expedited discovery in functionally identical pig-butchering case); *Cohn v. Popescu*, 1:24-cv-00337-MJT, Dkt. 8 (E.D. Tex.) (Truncale, J.) (Aug. 30, 2024) (same); *Strivelli*, 2022 WL 1082638, at *2 (granting broad expedited discovery in functionally identical crypto-fraud case); *see also Licht*, 2023 WL 4504585, at *4 (same).

[44] Cole Declaration, ¶ 8.

cryptocurrency exchanges determined to be in possession of relevant information.[45]

## VII.  Alternative Service

### A.      Legal Standard

Federal Rule of Civil Procedure 4(f)(3) allows a district court to order that a foreign defendant be served by any method reasonably calculated to give notice of the proceedings, provided that the method is not prohibited by international agreement.[46] The Hague Convention on Service Abroad, to which the United States is a signatory, applies for purposes of serving a foreign defendant in another country that has also ratified the convention.[47] But the Hague Convention does not apply where the defendant's address is unknown.[48] Accordingly, where a foreign defendant's address is unknown, as here, courts simply inquire whether the proposed service method is

---

[45] *See Licht*, 2023 WL 4504585, at *4 (authorizing expedited discovery on "any party" likely to have information about the defendants).

[46] FED. R. CIV. P. 4(f)(3) (providing that a party "may be served at a place not within an judicial district of the United States … by other means not prohibited by international agreement, as the court orders"); *Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161, at *3 (5th Cir. Feb. 14, 2022) (citing Rule 4(f)(3) and noting that "[s]ervice on a foreign defendant is [] proper when it is a court ordered method that is not prohibited by international agreement and is reasonably calculated, under the circumstances, to notify the defendant of the case and afford them an opportunity to present objections").

[47] *Densys Ltd. v. 3Shape Trios A/S*, 336 F.R.D. 126, 129 (W.D. Tex. 2020).

[48] *See Mycoskie, LLC v. 1688best*, No. 18-cv-60925, 2018 WL 4775643, at *1 (S.D. Fla. July 2, 2018) (Moore, J.) ("Article 1 of the Hague Service Convention states that '[t]his Convention shall not apply where the address of the person to be served with the document is not known.").

reasonably calculated to give notice of the proceedings such that it satisfies constitutional due-process requirements.[49]

Service by alternative means under Rule 4(f)(3) is "neither a last resort nor extraordinary relief."[50] Instead, "the rule serves as a safety valve for unanticipated situations and is not an unusual procedural technique."[51] Rule 4 does not require a party to attempt service by the methods enumerated in subsections (f)(1) and (f)(2), such as by diplomatic channels and letters rogatory, before petitioning the court for alternative service under subsection 4(f)(3).[52] Nor does it "require exhaustion of all possible methods of service before a court may authorize service by 'other means'[.]"[53]

Courts have repeatedly authorized service by alternative means in pig-butchering cases under this rule. The methods courts have approved

---

[49] *Id.*

[50] *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) ("[E]xamining the language and structure of Rule 4(f) and the accompanying advisory committee notes, we are left with the inevitable conclusion that service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant.").

[51] *Hazim v. Schiel & Denver Book Grp.*, No. 12-CV-1286, 2012 WL 12894747, at *1 (S.D. Tex. July 18, 2012) (quoting Wright & Miller, FEDERAL PRACTICE & PROCEDURE, § 1134 (3d ed. 2002)).

[52] *Viahart*, 2022 WL 445161, at *3 ("Service pursuant to the Hague Convention listed in subsection (f)(1), does not displace subsection (f)(3), which permits service by other means." (citing *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018)).

[53] *Broan-Nutone LLC v. Conglom Hong Kong Ltd.*, No. 23-CV-393-JPS-JPS, 2023 WL 8784668, at *2 (E.D. Wis. Dec. 19, 2023) (quoting *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 429 (1st Cir. 2015)).

18

include email,[54] instant message via applications like WhatsApp and Telegram,[55] transfer of Non-Fungible Tokens (NFTs) to cryptocurrency addresses controlled by defendants,[56] and publishing case documents online. [57]

### B.   The Requirements for Alternative Service Are Met.

A plaintiff's request for alternate service should be granted where three elements are met: (1) the defendants are located abroad, (2) the proposed service methods are not prohibited by international agreement, and (3) the proposed service methods are reasonably calculated to give the defendants actual notice of the proceedings. Each of these elements is met here.

---

[54] *Harris v. Upwintrade.com*, No. 1:24-CV-00313, 2025 WL 1485335, at *2 (E.D. Tex. Jan. 14, 2025) (authorizing service by email).

[55] *Fitzgerald v. Defendant 1*, No. 1:24-CV-21925, 2024 WL 3538245, at *3 (S.D. Fla. June 28, 2024) (authorizing service via Telegram message in pig-butchering case); *Licht v. Ling*, No. 3:23-CV-1018, Dkt. 19 (N.D. Tex. June 8, 2023) (authorizing service via WhatsApp in pig-butchering case).

[56] *Yogaratnam v. Doe*, No. 2:24-cv-00393 Dkt. 9 (E.D. La. Feb. 23, 2024) (authorizing service by transfer of Non-Fungible Token and website posting in pig-butchering case); *Sun v. Defendant 1*, No. 23-CV-21855-RAR, 2023 WL 4532417, at *2 (S.D. Fla. July 13, 2023) (authorizing service NFT transfer and website posting in pig-butchering case); *Bowen v. Li*, No. 23-CV-20399, 2023 WL 2346292, at *3 (S.D. Fla. Mar. 3, 2023) (same); *Bandyopadhyay v. Defendant 1*, No. 22-CV-22907, 2022 WL 17176849, at *3 (S.D. Fla. Nov. 23, 2022) (same).

[57] *Id.*

> ### 1. *Element 1: Location Abroad.*

Mr. Rodriguez has shown that the Defendants are located abroad as required for authorization of alternative means of service under Rule 4(f). The Cole Declaration provides evidence that the Defendants are pig-butchering scammers and that pig-butchering scams are invariably operated from abroad.[58] Courts have approved plaintiffs' requests for alternative service on similar evidence in many pig-butchering cases.[59]

> ### 2. *Element 2: Not Prohibited by International Agreement.*

The Defendants' physical addresses are unknown despite diligent investigation.[60] Accordingly, the Hague Service Convention does not apply.[61]

> ### 3. *Element 3: Reasonably Calculated to Give Actual Notice.*

Mr. Rodriguez requests authorization to serve the Defendants by the following methods:

| Target | Method | Explanation |
| --- | --- | --- |
| Wealth Firms | Nft Transfer | The scammers induced Mr. Rodriguez to transfer his assets to blockchain addresses capable of receiving service via NFT transfer. |
| Wealth Firms | Whatsapp | Representatives of WealthFirms communicated |

---

[58] Cole Declaration, ¶¶ 3 – 6.

[59] *See* fns. 54 – 57, *supra* (collecting cases).

[60] Cole Declaration, ¶¶ 3 – 6.

[61] *Mycoskie, LLC*, 2018 WL 4775643, at *1 ("Article 1 of the Hague Service Convention states that '[t]his Convention shall not apply where the address of the person to be served with the document is not known.").

| | | with Mr. Rodriguez via WhatsApp. |
|---|---|---|
| Nicole Bailey | Whatsapp | Bailey communicated with Mr. Rodriguez via WhatsApp. |

These are the same means of communication that the Defendants used to carry out their scam.[62] Courts routinely find that plaintiffs' proposed service methods are reasonably calculated to give actual notice where (i) the defendant does business online and (ii) the plaintiff has shown that the defendant uses the proposed service channels to conduct business relevant to the suit.[63] Mr. Rodriguez's proposed service methods are therefore reasonably calculated to give the Defendants actual notice of these proceedings.

## VIII.  Conclusion

For the reasons set out above, Mr. Rodriguez has met the standards for issuance of (i) an ex parte temporary restraining order freezing the Defendants' assets, (ii) a preliminary injunction, (iii) an order authorizing expedited discovery, and (iv) an order authorizing alternative service of

---

[62] Cole Declaration, ¶¶ 7-9 (describing proposed service methods and providing explanation of each).

[63] *See, e.g.*, *Sinox Co. Ltd. v. YiFeng Mfg. Co.*, No. 6:21-CV-01022-ADA, 2022 WL 1017916, at *4 (W.D. Tex. Apr. 5, 2022) (noting that "courts have found due process satisfied where the defendant does business online and the plaintiff has shown that the foreign defendant uses the particular email address to conduct business relevant to the matters at issue in suit" and collecting cases in accord); *Licht*, No. 3:23-CV-1018, Dkt. 19, at p.2 (N.D. Tex. June 8, 2023) (authorizing service via WhatsApp in pig-butchering case where defendants used WhatsApp to communicate with plaintiff); *Fitzgerald*, No. 24-CV-21925, 2024 WL 3538245, at *3 (S.D. Fla. June 28, 2024) (authorizing service via Telegram message in pig-butchering case where defendants used Telegram to communicate with plaintiff).

process. Mr. Rodriguezrequests that the Court issue this relief in the form of the proposed order submitted with this Motion.

Dated:  2026-08-07                          Respectfully submitted,

THE HODA LAW FIRM


Alexander J. Crous, Esq.
Tx. Bar No. 24136488
3120 Southwest Fwy
Houston, TX 77098
o. (832) 838-0036
alex@thehodalawfirm.com