UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

August 10, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ **CM** _____

DEPUTY

| | | |
|---|---|---|
| JOSE RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 5:26-CV-03723-MA |
| | § | |
| NICOLE BAILEY, WEALTH FIRMS, | § | |
| THE OKX OFF-RAMP DEFENDANT, | § | |
| THE BINANCE OFF-RAMP | § | |
| DEFENDANT, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

The Court now considers Plaintiff Jose Rodriguez's ("Plaintiff") "Emergency Motion for Ex Parte Temporary Restraining Order, Preliminary Injunction, Expedited Discovery, and Alternative Service."[1] In his motion, Plaintiff seeks: (i) an *ex parte* temporary restraining order freezing certain cryptocurrency accounts owned by Defendants; (ii) a preliminary injunction hearing; (iii) an order authorizing expedited discovery; and (iv) an order authorizing alternative service of process for all Defendants.[2] After considering the record, motion, and relevant legal authorities, the Court **PARTIALLY GRANTS** Plaintiff's Motion *for the reasons stated below*.

### I.    BACKGROUND AND PROCEDURAL HISTORY

This is a Racketeer Influenced and Corrupt Organizations Act ("RICO"), fraud, and conversion case. Plaintiff alleges that he was the victim of Defendants Nicole Bailey, Wealth Firms, the OKX Off-Ramp Defendant, and the Binance Off-Ramp Defendant's (collectively, "Defendants") fraudulent cryptocurrency-related "pig-butchering" investment platform, through

---

[1] Dkt. No. 8.
[2] Dkt. No. 8, at 1.

which Defendants stole at least $129,000 in Plaintiff's savings.[3] Plaintiff commenced this action on June 10, 2026, asserting: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) conversion; and (3) fraud.[4]

## II.    DISCUSSION

### a.  Temporary Restraining Order

A temporary restraining order may issue under Federal Rule of Civil Procedure 65(b) only if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Furthermore,

> [t]here are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction. To prevail, Plaintiff[s] must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from its being granted; and (iv) that a temporary restraining order will not disserve the public interest.[5]

"To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment."[6]

### 1.  Federal Rule of Civil Procedure 65

Plaintiff alleges that blockchain-tracing analysis shows that funds originating in cryptocurrency wallets designated by Defendants Nicole Bailey and Wealth Firms were transferred through a series of aggregation and intermediary wallets to accounts associated with the OKX and

---

[3] Dkt. No. 1, at ¶¶ 1–5.
[4] Dkt. No. 1, at ¶¶ 75–142.
[5] *Johnson v. Equifax Info. Servs. LLC*, No. 3:24-CV-2899-D, 2024 WL 5656589, at *1 (N.D. Tex. Dec. 26, 2024) (internal citations omitted); *accord Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).
[6] *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013).

Binance Off-Ramp Defendants.[7] Plaintiff further alleges that approximately $9,808 of his assets reached the OKX account and approximately $103,165 reached the Binance account, and that these funds remain at risk of being transferred beyond recovery at any time.[8]

Plaintiff provides the affidavit of Evan Cole ("Cole"), Head of Investigations at CyberJustice Law Group, who holds various certifications in cryptocurrency asset tracing and investigations.[9] Cole attests that, using blockchain tracing tools, he traced the initial cryptocurrency transfers from Plaintiff to Defendants "through the initial receiving addresses provided by the Defendants and identified subsequent asset transfers consistent with known cryptocurrency-related frau[d] patterns," and identified that "portions of [Plaintiff]'s funds were transferred to addresses associated with major exchanges Binance and OKX[.]"[10]

Cole identifies two account addresses where a portion of Plaintiff's allegedly stolen funds may still be located:

| Exchange | Address |
|---|---|
| OKX | 0x70e8fbf7fa9873f7e0a71b967d9f64a4e7a989f6 |
| Binance | bc1qa3vru9fuktdlwv7mg4r6a857rl7r5kx37m947m |

As to Rule 65(b)(1)(B) certification, Plaintiff provides the affidavit of Alexander Crous, counsel for Plaintiff, who purports to "verify the statements set out" in Plaintiff's motion.[11] However, attorneys are already required to sign pleadings and indicate by their signature that factual contentions have evidentiary support,[12] and an attorney's verification of the facts is generally inappropriate because lawyers are not to be witnesses to material facts in their client's

---

[7] Dkt. No. 1, at ¶¶ 75–142.
[8] Dkt. No. 8, at 4–5.
[9] Dkt. No. 8-2, at ¶ 2.
[10] Dkt. No. 8-2, at ¶ 5.
[11] Dkt. No. 8-3, at ¶ 2.
[12] *See* FED. R. CIV. P. 11(b)

case.[13] Facts and verifications are to be attested by parties and witnesses themselves, not their lawyers. Thus, Court finds this verification improperly made. However, the Court finds that Evan Cole's attestation that the allegations in Plaintiff's Complaint "are true and correct" adequately verifies the Complaint.[14] The verified allegations set forth sufficiently specific facts to support the conclusion that, because cryptocurrency assets may be transferred rapidly and anonymously, Defendants could move or conceal Plaintiff's allegedly stolen funds if given advance notice of this motion. In light of these representations, the Court finds that Plaintiff has complied with Rule 65(b)(1) and that a temporary restraining order may issue without prior notice to Defendants.

1. *Likelihood of Success on the Merits*

Plaintiff asserts claims against the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraud, and conversion. On the merits, the Court finds that Plaintiff has alleged that Defendants deceived him and intentionally misappropriated at least $129,000 in Plaintiff's assets.

To prove a civil RICO claim, a plaintiff "must show (1) a violation of § 1962, (2) an injury to his or her business or property, and (3) that such injury was proximately caused by a RICO violation[,]"[15] and that the defendant is a "an[] individual or entity" that engaged in a "pattern of racketeering activity" in connection with the acquisition, establishment, conduct, or control of an enterprise.[16]

To prove a Texas common-law fraud claim, a plaintiff must show: (1) the [defendant] made a material representation; (2) the representation was false; (3) when the [defendant] made the

---

[13] *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 ("A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client . . . .").

[14] *See* Dkt. No. 8-2, at ¶ 4.

[15] *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023) (internal citations omitted).

[16] 18 U.S.C. §§ 1961; *see also Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003).

representation he knew it was false or he made it recklessly without any knowledge of its truth or falsity; (4) the [defendant's] intention was that the other party should act upon the representation; (5) the other party acted in reliance upon the representation; and (6) the other party was injured."[17]

Finally, to prove a Texas common-law conversion claim, a plaintiff must prove that: "(1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused."[18]

The Court finds that Plaintiff's complaint has shown a prima facie case of substantial likelihood of success on the merits as to his claim. Plaintiff alleges that Defendants used a coordinated cryptocurrency fraud scheme to obtain and launder his assets. Plaintiff first alleges that Defendant Nicole Bailey allegedly cultivated Plaintiff's trust through WhatsApp, falsely and intentionally represented her investment expertise, and directed Plaintiff to Defendant Wealth Firms.[19] Plaintiff further alleges Defendant Wealth Firms then displayed fictitious trading profits and repeatedly demanded purported commissions, fees, and taxes while refusing Plaintiff's withdrawal requests.[20] Finally, Plaintiff alleges that, in reliance on those misrepresentations, Plaintiff transferred at least $129,000 and suffered total losses of $164,885 when his assets were seized and transferred to accounts owned by OKX Off-Ramp Defendant and Binance Off-Ramp Defendant wholly outside of Plaintiff's access or control.[21]

These allegations describe an association-in-fact between Defendants for a common illicit purpose: obtaining cryptocurrency thought deception and converting or laundering the proceeds in

---

[17] *Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 435 n.5 (5th Cir. 2026).
[18] *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012) (quoting *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir.2009)).
[19] Dkt. No. 1, at ¶¶ 54–57.
[20] Dkt. No. 1, at ¶¶ 58–61.
[21] Dkt. No. 1, at ¶¶ 62–63.

an intentional "pig-butchering" scam. Numerous district courts have found that this exigency justified issuance of *ex parte* restraining orders in similar crypto-fraud cases, and this Court finds their reasoning persuasive here.[22] Accordingly, the Court finds that the similarities between Plaintiff's allegations and the widely known characteristics of this distinctive kind of scam suggest that they will indeed be able to prevail on these claims against the Defendants once a full evidentiary record is developed.[23]

### 2. Substantial Threat of Immediate and Irreparable Harm

The irreparable-harm requirement is satisfied for the same reasons explained above regarding the need for *ex parte* relief. Plaintiff has affirmatively traced his assets to the cryptocurrency accounts identified in his motion, and these accounts are in Defendants' control. Because Plaintiff's assets are being held in a format that is uniquely susceptible to rapid and irreversible dissipation, the Court finds that the risk of immediate and irreparable harm to Plaintiff is high.

### 3. Greater Injury will Result from Denying the Temporary Restraining Order than from its Being Granted

Next, the Court concludes that the potential harm to Plaintiff outweighs any prejudice the Defendants might experience from freezing their accounts. As other courts evaluating similar claims for relief have observed,[24] preserving the funds in the recipient accounts may be Plaintiff's only practical avenue to recovery in this case in light of the ease with which cryptocurrency assets

---

[22] *See, e.g., Harris v. Upwintrade.com*, No. 1:24-cv-00313-MJT, Dkt. No. 7, at 9 (E.D. Tex. Aug. 8, 2024) (Truncale, J.) (collecting cases granting asset-freeze relief involving cryptocurrency); *Jacobo v. Doe*, No. 1:22-cv-00672-DAD-BAK (BAM), 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) (same); *Astrove v. Doe\**, No. 22-cv-80614-RAR, 2022 WL 2805345, at *2 (S.D. Fla. June 17, 2022) (same); *see also Licht v. Ling*, No. 3:23-CV 1018-X, 2023 WL 4504585, at *4 (N.D. Tex. June 20, 2023).
[23] *Licht*, No. 3:23-CV 1018-X, 2023 WL 4504585 at *2–*3.
[24] *Id.*

can be disseminated. By comparison, as other courts have also observed,[25] Defendants would face no more than a temporary restriction on transferring assets if the injunction is ultimately lifted or narrowed once forensic investigation can occur without alerting Defendants and risking further laundering.

 4. *Greater Injury will Result from Denying the Temporary Restraining Order than from its Being Granted*

The Court finds that issuing the requested injunctive relief is in the public interest. Preventing Defendants from profiting off of their alleged scheme will deter like conduct and reduce Defendants' capacity to engage in similar schemes in the future or during the pendency of this action. To the extent the Court's order may freeze assets owned by individuals other than Plaintiff, that inconvenience is not outweighed by the public's interest in freezing accounts to which Plaintiff's money has been affirmatively traced.[26]

**ASSET FREEZE**

Accordingly, the Court **GRANTS** Plaintiff's request for a temporary restraining order. The Court **ORDERS** the following cryptocurrency wallets at the corresponding exchanges or platforms be frozen immediately:

| Exchange | Address |
|---|---|
| OKX | 0x70e8fbf7fa9873f7e0a71b967d9f64a4e7a989f6 |
| Binance | bc1qa3vru9fuktdlwv7mg4r6a857rl7r5kx37m947m |

The Court **ORDERS** Plaintiff to cause a copy of this Order to be served on these above-listed entities in a manner compliant with Rule 4 or as the Court may further direct. Upon receiving

---

[25] *Id.*

[26] *See Harris*, No. 1:24-cv-00313-MJT, Dkt. No. 7, at 10 (citing *Gaponyuk v. Alferov*, No. 223CV01317KJMJDP, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022)).

a copy of this Order, the above-listed shall be restrained and enjoined from disbursing assets, directly or indirectly, to or on behalf of Defendants or any entities under Defendants' control.

The Court further **ORDERS** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of the persons controlling the accounts associated with the above-listed receiving addresses, or any business entity through which they act or which acts in active concert or participation with them; including but not limited to those assets currently held at or for the receiving addresses.

Additionally, the Court **ORDERS** that all movement, alteration, or destruction of books, records, and accounts related to the above-listed wallets is prohibited. Accordingly, Defendants and the above-listed entities shall be restrained and enjoined from destroying, altering, or concealing any documents, accounts, passwords, cryptographic keys, instruments, or data relating in any manner to the wallets listed above or the subject-matter of this lawsuit.

In accordance with Fed. R. Civ. P. 65(b)(2), this Order will expire fourteen (14) days from its entry, **on August 24, 2026, at 3:03 p.m.**, unless it is extended for good cause shown upon further Order of the Court. No bond shall be required to be posted by Plaintiff.

The Court further **ORDERS** that a hearing on Plaintiff's request for a preliminary injunction is set for **Thursday, August 20, 2026, at 10:00 a.m.** The parties shall appear before this Court at that time, and Defendants may be heard in opposition to the requested preliminary injunction.

### b. Expedited Discovery

Typically, parties may not seek "discovery from any source before the conference required by Rule 26(f)."[27] But expedited discovery before a Rule 26(f) conference is permitted where "authorized … by court order."[28] Courts in this district apply a "good cause" standard to determine whether such an order should issue.[29] Good cause may be found where "the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party."[30]

Plaintiff seeks expedited discovery for the purposes of obtaining "biographical and contact information associated with the Defendants' accounts; IP-address and device logs showing the devices and locations from which the Defendants accessed their accounts; [p]ayment information, including transaction histories and information about credit or debit cards used to pay for the subpoena targets' services; and [a]ccount balances and activity."[31] This proposed discovery arises from Plaintiff's pre-suit blockchain tracing and investigation of Defendants' web properties, which revealed a series of third parties likely to be in possession of information about Defendants.[32] Each of those third parties and their connection to the case, as provided in the affidavit of Evan Cole,[33] is set out below.

| Subpoena Target | Connection to Case |
|---|---|
| WhatsApp, LLC | Mr. Rodriguez communicated with various individuals affiliated with the scam via WhatsApp. WhatsApp may possess information about the various users. |

---

[27] FED R. CIV. P. 26(d)(1).
[28] FED R. CIV. P. 26(d)(1).
[29] *See, e.g.*, *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011).
[30] *Id.*
[31] Dkt. No. 8, at 15–16.
[32] *See* Dkt. No. 8-2, at ¶¶ 6–8.
[33] Dkt. No.8-2, at ¶ 8.

| | |
|---|---|
| Namecheap, Inc. | Namecheap is the registrar of the wealthfrontstock.com web domain. They may possess information about the domain's operators. |
| NameSilo LLC | Namesilo is the domain registrar for wealthfrontes.com. They may possess information about the domain's operators. |
| Binance | The majority of Mr. Rodriguez's funds were traced to a deposit address at Binance. Binance will possess information about the accountholder associated with this address. |
| OKX | A portion of Mr. Rodriguez's stolen funds were traced to a deposit address at OKX. OKX will possess information about the accountholder(s) associated with the address. |
| Akamai International, B.V. | The wealthfrontstock.com domain is hosted on IP addresses belonging to Akamai International, B.V., an ISP headquartered in Massachusetts. They may possess information about the domain's operators. |
| NetZero, Inc. | The wealthfrontes.com site is hosted on IP addresses belonging to NetZero. They may possess information about the domain's operators. |

Plaintiff additionally seeks "authorization to issue follow-on subpoenas seeking the same scope of information . . . to additional internet-service providers and cryptocurrency exchanges determined to be in possession of relevant information."[34]

Courts have authorized expedited discovery from cryptocurrency exchanges in cryptocurrency-related fraud cases like this one, on a finding that "any privacy interests that alleged cybercriminals have concerning the discovery of information about their identities and activities is outweighed by the need to adjudicate victims' claims against them."[35] The Court finds

---

[34] Dkt. No. 8, at 16–17.
[35] *Harris*, No. 1:24-cv-00313-MJT, Dkt. No. 7, at 10 (citing *Gaponyuk*, 2023 WL 4670043, at *4).

those courts' reasoning persuasive and concludes that good cause for expedited discovery to be ordered at the scope requested. However, because the identity of any prospective subpoena recipient, the proposed scope of discovery, and the burden on the recipient are not presently before the Court, the Court declines to authorize unspecified future subpoenas. Plaintiff may seek further expedited discovery upon a particularized showing of good cause.

Accordingly, the Court **PARTIALLY GRANTS** Plaintiff's request for expedited discovery. Plaintiff is **AUTHORIZED** to serve subpoenas on the third parties identified above. All subpoenaed parties shall produce the materials sought in the subpoena to Plaintiff's counsel **within seven (7) days of their receipt of Plaintiff' subpoena and this Order.**

The Court finds that any privacy interest the Defendants have in the documents requested by Plaintiff is outweighed by the need to investigate and prosecute the theft and conversion alleged in the complaint. Such privacy concerns shall not be good cause for the subpoenaed party to withhold the requested material.

Plaintiff's request for expedited discovery is **DENIED WITHOUT PREJUDICE** to the extent it seeks relief beyond that expressly granted in this Order.

### c. Alternative Service

Plaintiff additionally requests that the Court authorize him to serve Defendant Nicole Bailey through Whatsapp, and Defendant Wealth Firms by NFT Transfer and Whatsapp.[36]

Federal Rule of Civil Procedure 4(f)(3) permits a court to authorize service on an individual in a foreign country by any means that is reasonably calculated to give that individual notice and

---

[36] Dkt. No. 8, at 20–21.

is "not prohibited by international agreement."[37] Rule 4(h)(2) incorporates Rule 4(f) for service on a foreign corporation, partnership, or unincorporated association.[38]

Plaintiff represents that, although he has determined that Defendants are located abroad, their physical addresses remain unknown despite diligent investigation.[39] The affidavit of Evan Cole corroborates that representation.[40] Cole further attests that the proposed WhatsApp accounts and digital-wallet addresses are channels through which Defendants communicated or transacted with Plaintiff and through which they may receive notice of this action.[41]

On this record, the Court finds that alternative service is warranted, and further finds that service on Defendant Nicole Bailey through WhatsApp, and service on Defendant Wealth Firms through WhatsApp and an NFT transfer are reasonably calculated to provide Defendants with notice of this action.[42] The Court observes that this finding, too, comports with the general trend of alternative service authorizations permitted by courts under substantially similar cases.[43] The Court further observes that service in the manner proposed by Plaintiff is not prohibited by international agreement, as the Hague Convention on the Service Abroad of Judicial and Extra-

---

[37] FED. R. CIV. P. 4(f)(3).

[38] *See* FED. R. CIV. P. 4(h)(2) (incorporating Rule 4(f) for service on a foreign corporation, partnership, or unincorporated association).

[39] Dkt. No. 8, at 20.

[40] Dkt. No. 8-1, at ¶¶ 3–6.

[41] Dkt. No. 8-2, at ¶ 9.

[42] *Sinox Co. Ltd. v. YiFeng Mfg. Co.*, No. 6:21-CV-01022-ADA, 2022 WL 1017916, at *4 (W.D. Tex. Apr. 5, 2022) ("[C]ourts have found due process satisfied where the defendant does business online and the plaintiff has shown that the foreign defendant uses the particular [channel of communication] to conduct business relevant to the matters at issue in suit.") (collecting cases); *Licht*, 2023 WL 4504585, at *4.

[43] *Licht v. Ling*, No. 3:23-CV 1018-X, Dkt. No. 19, at 2–3 (N.D. Tex. June 8, 2023) (Starr, J.); *Doan v. Doe Defendant "1"*, No. 4:25-CV-03097, 2025 WL 3762155, at *2–*3 (S.D. Tex. Sept. 18, 2025); *Chow v. Defendant 1*, No. 24-CV-480, 2024 WL 3225917, at *1 (E.D. La. Apr. 19, 2024).

Judicial Documents in Civil and Commercial Matters does not preclude the court from authorizing service of process by either proposed means.[44]

Accordingly, the Court **GRANTS** Plaintiff's request for alternative service. Plaintiff is authorized to serve Defendants Nicole Bailey and Wealth Firms through the alternative means proposed, which shall constitute effective service of process for all purposes in this action.

IT IS SO ORDERED.

DONE this 10th day of August, 2026, at 3:03 p.m., in San Antonio, Texas.

_____
MICAELA ALVAREZ
SENIOR UNITED STATES DISTRICT JUDGE

---

[44] *See Doan v. Doe Defendant "1"*, No. 4:25-CV-03097, 2025 WL 3762155, at *3 (S.D. Tex. Sept. 18, 2025); *see also* Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361.